**Leecy Carruther ANDERSON, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–82–058–CR.**

Court of Appeals of Texas, Fort Worth.

April 6, 1983.

Frank W. Sullivan, III, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Don Hase, Asst. Dist. Atty., Fort Worth, for State.

Before FENDER, C.J., and BURDOCK and SPURLOCK, JJ.

OPINION

SPURLOCK, Justice.

Appellant, Leecy Carruther Anderson, was convicted by a jury of murder. V.T. C.A. Penal Code, § 19.02. That jury assessed punishment at ten (10) years imprisonment.

We affirm.

Anderson appeals her conviction in three grounds of error: (1) asserting that there was insufficient evidence to support the jury verdict; (2) contending that the trial court erred in failing to give a jury charge upon the law of self-defense; and (3) arguing that the trial court also erred in failing to give a jury charge upon voluntary manslaughter.

Because Anderson alleges that the evidence adduced at trial was insufficient to support her conviction, we must explore the pertinent facts of the case. On the morning of December 7, 1980, Anderson shot and killed her husband, Louis Anderson, Sr. (henceforth referred to as "deceased"), in the course of an argument over her housekeeping habits. Anderson took the stand to assert her defense to the charge. She testified that she had suffered a heart attack in a doctor's office approximately two weeks prior to the killing. She stated that she was a registered nurse, and was recuperating at her house, and was taking several medications. Anderson said that she went to the downstairs area of her home between 7:00 and 8:00 a.m. to take her medicine and encountered the deceased sitting on the living room couch. He began arguing with her about the messy state of their home. Anderson testified that during her attempts to explain why she hadn't been able to do her housework, the deceased grew angrier and jumped up and began hitting her about the face and chest. She then "backed off"

and "felt trapped and snatched the gun off the top of the refrigerator" and shot the deceased. She was standing in the kitchen, and shot him where he was in the living room. Anderson stated that she had never shot the deceased prior to December 7, 1980, and also that she did not intend to kill him. She also testified that a scar on her forehead, visible on the day of trial, was caused when the deceased hit her in the face on December 7, and caused a blackhead there to get worse and create a scar. She stated that the blow caused her forehead to bleed at the time. Anderson asserted that she was trying to get the deceased off of her and get him away because she felt trapped, and "it was an accident. It was panic, ... I just couldn't do no better."

Upon her cross-examination, Anderson was evasive in her answers, but finally admitted that she had shot the deceased once before, in 1973. She stated that she had gotten the gun out of a paper sack on top of the refrigerator, and reiterated that she had only fired the pistol once. Anderson also admitted that the deceased had a damaged nerve in one leg, and that this leg was not completely functional. She nevertheless claimed that she shot the deceased while he attempted to "run up on me and hit me". Anderson also said that she had accused the deceased of "running around on her", and that they had argued over this, but that this was not the issue the day she shot her husband.

Willie Anderson, the son of the appellant and the deceased, testified that he lived at the home of his parents; was asleep on the morning of the shooting; heard the shot fired, and came downstairs to the family living room to find the deceased lying across Anderson's legs as she sat in a chair; Anderson had her pistol in her hand; the deceased had his hand on her wrist holding the pistol away from him. Willie Anderson then took the pistol from his mother, placed his father upon the couch and called an ambulance. Then Willie went, with the pistol, to the home of his brother, Louis Anderson, told Louis what had happened, and gave Louis the pistol.

Louis Anderson testified to the effect that Willie had come to his house, related the above mentioned events to him, and had given Louis his mother's pistol, which he recognized as hers. Louis did not load, unload, or make any changes in the bullets within the pistol. Louis went to Leecy Anderson's home, and gave the pistol to Officer Cullum. Louis testified that Leecy Anderson told him that the deceased hit her, and that she then walked over to her purse and got her gun and shot him.

Officer Cullum testified to the effect that: he was the first officer to arrive at the scene; he found the deceased lying and sitting across the sofa, with a wound to his upper left chest, and still alive; he asked Leecy Anderson what happened, and she replied that she had shot her husband; he then placed Leecy Anderson under arrest and advised her of her rights; he noticed no wounds on Leecy Anderson; and, that Louis Anderson gave him a handgun at the scene. The handgun contained three live rounds and two spent shells.

Kimberly Anderson, the daughter of Leecy Anderson and the deceased, testified that Leecy Anderson had picked at a pimple on her forehead until it turned dark, and that this mark visible on her forehead had been visible for months prior to the shooting.

The medical examiner testified to the effect that the deceased died of a gunshot wound. He stated that the entry wound was 4″ higher than the exit wound, indicating that the bullet traveled in a downward path. The bullet lacerated the deceased's heart and pierced his left lung, and was fired from no closer than two feet away. The deceased was 5′7½″ tall. No evidence of a second bullet was found.

Detective Barksdale testified that he had found a projectile mark on a concrete wall in the living room. In his opinion the bullet causing the mark disintegrated. Concrete chips were found on the table and floor below the wall. The mark is 5′11″ above the floor (which is higher than the entry wound on the body of the 5′7½″ tall deceased). In his opinion, the bullet which

caused this mark on the wall was not fired from the kitchen.

Anderson's first ground of error asserts that there was "insufficient evidence to sustain the conviction for murder." As the State points out in its brief, the real issue is not whether a conviction for some other lesser offense would have been more appropriate, but rather whether the evidence adduced at trial was sufficient to support Anderson's conviction for murder. The relevant facts have been set forth above. In viewing the evidence adduced at trial in the light most favorable to the jury verdict, pursuant to the standard of review set forth in *Drager v. State,* 548 S.W.2d 890, 892 (Tex.Cr.App.1977), we hold that the evidence was sufficient to support a rational trier of facts, in finding, beyond a reasonable doubt, each essential element of the offense of murder. *See In Re Winship,* 397 U.S. 358, 365, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970). Consequently, Anderson's first ground of error is overruled.

Anderson's second ground of error alleges that the trial court erred by failing to charge the jury, *sua sponte* upon the law of self-defense. Her third ground of error argues that the trial court erred by failing to charge the jury *sua sponte* upon the law of voluntary manslaughter. Anderson's brief concedes that her failure to request a charge upon self-defense and voluntary manslaughter (coupled with her failure to object to the charge as written) waives all but fundamental error. *See Duffy v. State,* 567 S.W.2d 197, 204 (Tex.Cr.App.1978). No fundamental error exists here. Having failed to object to the charge, or request instructions upon self-defense or voluntary manslaughter, we find that no error has been presented for our review. Grounds of error two and three are therefore overruled.

The judgment is affirmed.