Moats-DP v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-023-CR

     DAVID PAUL MOATS,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 296th District Court
Collin County, Texas
Trial Court # 296-80141-95
                                                                                                    

O P I N I O N
                                                                                                    

      Appellant Moats appeals from his conviction for aggravated assault on a police officer, for
which he was sentenced to 20 years in the Texas Department of Criminal Justice, Institutional
Division.
      Appellant was charged with aggravated assault on Jeffrey Dalton, a police officer, by using
a deadly weapon, a dog that, in the manner of its use, was capable of causing death or serious
bodily injury.
      A jury convicted Appellant and the judge sentenced him to 20 years in prison. 
      Appellant appeals on six points of error.
      Point I: "The evidence is legally insufficient to establish that Appellant used a deadly weapon
to assault Jeffrey Dalton."
      Point II: "The evidence is factually insufficient to establish that Appellant used a deadly
weapon to assault Jeffrey Dalton."
      Specifically, in both points, Appellant asserts there is insufficient evidence to demonstrate the
use of a deadly weapon, i.e., the dog, "Slash."
      The standard for legal sufficiency is to view the evidence in the light most favorable to the
verdict, and determine if any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789
(1979); Wilson v. State, 863 S.W.2d 59 (Tex. Crim. App. 1993).
      Factual sufficiency requires a viewing of the evidence without the prism of "in the light most
favorable to the verdict," and we will set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922
S.W.2d 126 (Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d 375 (Tex. App.—Austin 1992). 
Under the Clewis standard, we consider all the evidence, including the evidence of defense
witnesses and the existence of alternative hypotheses.
      On September 5, 1994, at 9:45 P.M., Jeffrey Dalton, a uniformed Plano police officer,
responded to a call from David Scytkowski at a mobile home park in Plano. Dalton testified
Scytkowski told him Appellant had spun the wheels of his vehicle throwing rocks on Scytkowski's
vehicle. Dalton agreed to talk with Appellant, knocked on the door of his trailer, and asked
Appellant to step outside. Appellant did so, and Dalton asked him if he had any outstanding
warrants. Appellant made a dash for the door. Dalton stopped Appellant before he entered the
trailer, and Dalton was hit in the head. Appellant then opened the trailer door and, according to
one witness, yelled "attack, attack, attack." A large pit-bulldog came running out of the trailer
and headed straight for Dalton. Dalton, who said he was afraid the dog was going to bite him and
that he was in fear of imminent bodily injury or death, shot the dog when it was at his feet.
      Officer Schaffer arrived at the scene, saw Appellant hitting Dalton and saw the dog at
Dalton's leg. He heard a gunshot and saw Dalton and Appellant fall. Schaffer struggled with
Appellant, handcuffed him, and transported Appellant to jail. On the way to jail, Appellant was
abusive and aggressive. 
      Jenifer Schumacher, a Plano animal-control officer, arrived at the scene. She saw the dog
lying in a pool of blood. She described the dog as a large pit-bull weighing about 70 pounds and,
in her opinion, capable of causing serious bodily injury or death.
      Dr. Beaver, a veterinary professor at Texas A&M, testified: a dog's behavior is a result of
how the dog is handled; the treatment of a dog by his owner can make a dog dangerous; a dog like
Slash is capable of causing death or serious bodily injury; and telling a dog to "attack, attack"
indicates that the owner desired the dog to come on aggressively.
      Scytkowski testified Appellant hated the police; had a vendetta against the police; and that
Appellant told him he had the dog for the specific purpose of "taking" a police officer.
      William Chaillot owns a dog-boarding kennel and trains dogs. He testified that Appellant
worked for him one and one-half-years; that Appellant took the dog through an obedience training
course which did not include attack training. He testified the dog never displayed any aggressive
tendencies.
      Virginia Smiley lived in the mobile home park. She testified she knew Appellant and never
saw his dog bother anyone. She said some pit bulldogs can be dangerous and some are not.
      Brenna Thomas also knew Appellant from the mobile home park. She testified the dog was
a well-behaved dog; she was not afraid to let her children be around the dog. On the evening of
September 5, 1994, she was looking out her window when she saw a police car drive up. She saw
the dog walking around the outside of Appellant's trailer; heard Appellant yell, "Slash, get in the
dog house." Shortly after she heard a shot. She did not hear Appellant say "attack, attack,
attack."
      Michael Ortertag, a friend of Appellant who had visited Appellant before, was visiting him
in the trailer on September 5, 1994. He had never seen the dog be aggressive or mean. He heard
a knock on the trailer door which Appellant answered and then went outside. He heard a scuffle
and heard Appellant say, "stop hitting me," and "Mike they're taking me on a warrant." He
testified the commotion outside caused the dog to become concerned and the dog ran out the door. 
He heard Appellant tell the dog, "go to your house." He never heard Appellant say, "attack,
attack." He heard the gunshot which caused him to run out the back door of the trailer and leave.
      Patricia Murley is secretary of the National Pit Bull Association. She testified that all such
dogs are not dangerous; that she had listened to all the testimony at the trial; that she did not
believe that Slash was trained as an attack dog; that it appeared to her that he was simply coming
to the rescue of his master; that she was familiar with Slash and never saw any sign that he was
dangerous or that he was trained to attack. She also testified that, in her opinion, the dog was
capable of doing bodily injury.
      Kathy Clark, an animal control officer for the City of Lufkin, testified that she sat through
the testimony in Appellant's trial and concluded that Officer Dalton did not overreact in shooting
the dog; and that a pit bulldog can be very dangerous in the hands of an irresponsible person.
      Police Officer Cucco testified he arrested Appellant on July 2, 1992, for disorderly conduct;
that in the course of being arrested, Appellant screamed at him and at another officer, "I hate you
*** guys."
      Here, the evidence shows that Appellant's dog was not only capable of causing death and/or
serious bodily injury, but the jury could have found that Appellant had trained the dog for that
specific purpose. Under either sufficiency review, the jury's verdict is supported by the record,
and is not clearly wrong and unjust.
      Points I and II are overruled.
      Point III: "The trial court erred in failing to include a culpable mental state in its application
of the law of aggravated assault to the facts of the case in the court's charge to the jury."
       The indictment alleged, in pertinent part, that Appellant did
            intentionally and knowingly, threaten Jeffrey Dalton with imminent bodily
injury and did then and there use a deadly weapon, namely: a dog, that in the
manner and means of its use and intended use was capable of causing death and
serious bodily injury, and the said Jeffrey Dalton was then and there a public
servant employed by the City of Plano Police Department . . . .

      The court, in its charge, instructed the jury:
 
Now, if you find from the evidence beyond a reasonable doubt . . . that [Appellant]
did then and there threaten Jeffrey Dalton with imminent bodily injury and did then
and there use a deadly weapon, namely: a dog that in the manner or means of it use
. . . .

      The court's charge omitted the culpable mental state of "intentionally" or "knowingly." 
Appellant's counsel did not object to this defect in the charge.
      In the absence of an objection, the case will be reversed only if the error was so egregious and
created such harm that Appellant has not had a fair and impartial trial. Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1984). Such must be determined in the light of the entire jury
charge, the state of the evidence including the contested issues and weight of the probative
evidence, the argument of counsel, and any other relevant information revealed by the record of
the trial as a whole. Almanza, at 171.
      The court's charge properly defined the term assault as "intentionally and knowingly
threatening another with imminent bodily injury," and further properly defined aggravated assault. 
The charge also properly defined the terms "intentionally" and "knowingly." The charge further
required the state to prove every element of the offense beyond a reasonable doubt.
      The charge, as a whole, thus properly defined the offense and its appropriate mental state and
required the jury to find each element of the properly defined offense beyond a reasonable doubt. 
We think what when the charge is read, as a whole, the jury could convict Appellant of aggravated
assault, and find that his actions were "intentional" and knowing."
      Moreover, the contested issue in the case was whether or not the dog ,"Slash," was capable
of causing death and/or serious bodily injury, i.e., a deadly weapon. The issue was not whether
Appellant "knowingly" or "intentionally" assaulted Officer Dalton.
      When the entire charge, record, evidence, contested issues, and arguments are examined, the
complained-of error does not constitute such egregious harm that Appellant did not have a fair and
impartial trial.
      Point III is overruled.
      Point IV: "The trial court erred in admitting evidence before the jury that Appellant
committed an extraneous offense."
      During the case-in-chief, the State offered evidence that Appellant hated police officers and
was training his dog to attack them. Appellant rebutted this evidence during his case-in-chief,
demonstrating the dog was not violent or aggressive. Moreover, Appellant offered evidence the
police were the aggressors against him and overreacted to the dog.
      The State, in rebuttal, offered evidence of Appellant's arrest in 1992 when the police
responded to a disturbance call at Appellant's trailer and arrested him for disorderly conduct,
Appellant was violent and screamed, "I hate you *** guys," to the police.
       We think the evidence was properly admitted as it logically served to make more probable
the State's prior evidence. Tex. R. Crim. Evid. 401; Montgomery v. State, 810 S.W.2d 372, 387
(Tex. Crim. App. 1990). And the evidence was admissible to show intent of Appellant. Tex. R.
Crim. Evid. 404(b).
      Point IV is overruled.
      Point V: "The trial court erred in denying Appellant the right to confront and cross-examine
a State's witness."
      David Scytkowski testified for the State. He provided critical evidence describing the
confrontation between Appellant and Officer Dalton. Outside the presence of the jury, Appellant
established that Scytkowski had been arrested on a felony-drug charge in Dallas County about 30
days prior to Appellant's trial. He requested permission to cross-examine Scytkowski about that
pending charge in the presence of the jury. His request was denied. Scytkowski had not been
indicted and stated outside the presence of the jury that he did not expect to receive any benefit
whatsoever in the disposition of the Dallas case as a result of his testimony against Appellant.
      Carroll v. State, 916 S.W.2d 494 (Tex. Crim. App. 1996), addressed a similar situation as
here. In Carroll, four of the nine members of the court held that failure of the trial court to allow
cross-examination of a witness regarding pending criminal charges against him,


 constitutes error
as a violation of the confrontation clause of the U.S. Constitution. Two other members of the
court concurred only conditioned upon the caveat that, if any pending charges were from a
separate jurisdiction, they would hold that release of that information to the jury would be subject
to a discretionary ruling of the trial court under Rule 403, Texas Rules of Criminal Evidence. 
      Three members of the court dissented from the court's disposition, opining that it was not an
abuse of discretion to disallow cross-examination of a witness regarding an unrelated criminal
charge.
      Under our facts, the unrelated criminal charge was in another jurisdiction. Five members of
the court in Carroll held that if the pending charges were in another jurisdiction, the release of the
information would be subject to a discretionary ruling of the trial court.
      Point V is overruled.
      Point VI: The trial court erred in failing to swear those summoned as jurors in the cause prior
to beginning the voir dire examination of the prospective jurors.
      Appellant contends that since the record does not expressly demonstrate the jury panel was
sworn prior to voir dire, pursuant to Tex. Code Crim. Proc., art. 32.05, there can be no
presumption that they were sworn.
      An appellate court must presume the jury was properly impaneled and sworn unless such
matter was made an issue in the trial court, or it otherwise affirmatively appears to the contrary
from the record. Clay v. State, 505 S.W.2d 882 (Tex. Crim. App. 1974); Duffy v. State, 567
S.W.2d 197 (Tex. Crim. App. 1976).
      There was no objection by Appellant in the record to a failure to administer the oath to the
jury panel. Appellant raised the point for the first time on appeal. Moreover, the record does not
affirmatively show that the oath was not given.
      Point VI is overruled. The judgment is affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Chief Justice Davis,
      Justice Vance and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed April 9, 1997
Do not publish