Thomas Edward MAYBERRY, Appellant,

v.

The STATE of Texas, Appellee.

No. 49840.

Court of Criminal Appeals of Texas.

Nov. 26, 1975.

On Rehearing Feb. 4, 1976.

John Rapier and Malcolm Dade, Dallas, for appellant.

Henry Wade, Dist. Atty., and Steve Wilensky, Fred Davis and John Ovard, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

Appeal is taken from a conviction for possession of heroin. After the jury returned a verdict of guilty, punishment was assessed by the court at sixteen years.

On December 10, 1971, Officers Walker, Avey, and Barnett went to a residence at 4152 Prescott Street in Dallas after having been advised that this was the address of one Ed Weaver. They were seeking Weaver by reason of information they had received that Weaver had purchased a stolen television set. Upon knocking at the door at the address in question, a person later identified as James E. Goodman, alias Norris Paul Dittrick, opened the door. Goodman, in response to the officers' questions, stated that he did not live there and he did not know if Ed Weaver lived there. Goodman told the officers "Old Tom pays the rent" and "Old Tom will know where Ed is at." The officers then asked, "Could we talk to Old Tom?" While there is conflict among the officers' testimony as to what, if anything, was said at this juncture, all three officers testified that Goodman motioned with his hand for them to follow him. The three officers entered the living room and Barnett testified that Goodman motioned to him a second time to follow him. Barnett entered the kitchen behind Goodman and observed appellant cutting or slicing a white substance that appeared to be heroin. A lab analysis of the powder seized from the table in the kitchen revealed that the substance contained heroin and morphine.

## I.

Appellant first urges that Goodman did not have the authority to consent to a search of appellant's residence. The State counters that the officers merely seized evidence in plain view after being lawfully invited onto the premises, and that no search took place. Justification for this view can be found in *Alberti v. State*, 495 S.W.2d 236 (Tex.Cr.App.1973), where the seizure of marihuana in plain view inside defendant's apartment was upheld since the defendant, responding to the officers' knock at his door, had invited them to come in. In *Alberti*, this Court wrote:

"We recognize that it has long been the rule in this jurisdiction that an invitation to officers to enter a residence ordinarily cannot be construed as an invitation or consent to *search. Robertson v. State*, 375 S.W.2d 457 (Tex.Cr.App.1964). However, that case and many others have recognized that officers invited in are not trespassers and have a right to seize articles in open view." (Citations omitted).

The distinction between a search and mere entry of a person's dwelling is thus established. But the discovery of the heroin in this case cannot be justified on the basis of *Alberti*. The issue of authority to consent to a mere entry of a dwelling was not present in either *Alberti*, supra, or *Robertson*, supra, because the invitation to officers to enter the dwelling was in both cases given by the defendant who was a resident there. Those cases can be taken to mean only that mere entry is a lesser intrusion than a search, but not that mere entry is no intrusion at all. Cf. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Simply because officers merely entered appellant's residence pursuant to Goodman's invitation does not mean that the Fourth Amendment is inapplicable. Reliance on magic words such as "search" is misplaced. Cf. *Terry v. Ohio*, supra. The Fourth Amendment protects not only against unreasonable searches and seizures but against any invasion of a person's rea-

**82**

sonable expectation of privacy. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (especially concurring opinion of Harlan, J.); *Mancusi v. Deforte,* 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); *Lowery v. State,* 499 S.W.2d 160 (Tex.Cr.App.1973); *Sorensen v. State,* 478 S.W.2d 532 (Tex.Cr.App.1972), and *Buchanan v. State,* 471 S.W.2d 401 (Tex.Cr.App. 1971). There is not much dispute that a person is entitled to a reasonable expectation of privacy in his own home. *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Appellant in the instant case was discovered cutting heroin in the kitchen of his own home, out of view of passers-by and even others in the house. Surely it cannot be said that he had no reasonable expectation of privacy. Therefore, the Fourth Amendment was not inapplicable.

The question then becomes, did Goodman have authority to waive appellant's Fourth Amendment protections. I cannot subscribe to the State's contention that any unauthorized third person might consent to mere entry of another's house, simply because it is a lesser intrusion than a search. Such a holding makes serious inroads into our Fourth Amendment protections.

The cases of *United States v. Mattlock,* 476 F.2d 1083 (7th Cir. 1973), rev'd on other grounds, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), and *Lowery v. State,* 499 S.W.2d 160 (Tex.Cr.App.1973), and the annotations at 31 A.L.R.2d 1078 discuss authority for consent to search and provide a good starting point for the inquiry in the instant case. These authorities make it clear that third persons can give consent to search premises only when they have rights of control or use of the premises concomitant to those of the owner's. *Mattlock* states that this authority to consent to a search consists of both a reasonable appearance that such authority exists and facts existing just prior to the search showing actual authority to consent. Goodman lacked authority to consent to a search under either of these tests. The record shows

that Goodman did not live at the house, that he did not even know if Ed Weaver did live there, and that he communicated these facts to the officers prior to his invitation for them to enter.

The case of *Illinois v. Dent,* 371 Ill. 33, 19 N.E.2d 1020 (1939) is close to the facts in the present case. There, police knocked on defendant's door and entered the house when defendant's companion said, "Come in." They found defendant and her companion sitting at a table with a policy book, numbers, and betting slips spread out before them. A majority of the Illinois Supreme Court held that the materials thus seized were inadmissible and said that there must be a showing that the companion's invitation to the officers to enter the premises was specifically authorized by the resident defendant. The Court added that a person's Fourth Amendment rights are personal and cannot be waived indiscriminately by anyone else without doing violence to the constitutional principle.

Perhaps it should be held that a third person needs as much authority to waive an owner's protections against mere entry as he would need to consent to a search. But we need not go that far in this case. The officers' entry into appellant's house, although not as intrusive as a search, was nevertheless a lesser invasion of appellant's reasonable expectation of privacy. As such, it could not be authorized by Goodman, whose lack of authority to give such permission was not only a fact but was known to the officers. To hold otherwise would be to hold that *anyone* could give consent to police officers merely wishing to enter another person's home.

II.

Reversal of this conviction is also mandated by prejudicial prosecutorial argument in this case. At the guilt-innocence stage of the trial, the following proceedings transpired:

"MR. DAVIS [Prosecutor]: I think common sense, and certainly a reasonable deduction from the evidence about how heroin is packaged, how it's sold, what it sells for, tells you that it results in more crime in this community; that people do anything to get heroin, that this man  .  .  .

"MR. CHITWOOD: Your Honor, I again object to this argument here.  There is no evidence here whatsoever as to the effect of heroin on crime in Dallas County.

"MR. DAVIS: I will withdraw it.

"THE COURT: Overruled.

"MR. CHITWOOD: Note my exception."

The prosecutor's references to the packaging and selling of heroin might well have been a reasonable deduction from the evidence about the amount of heroin found, the cellophane wrappers and tape also found, the heroin that was already packaged, and the cost of heroin on the street. This type of deduction from the evidence was approved in *Powell v. State,* 502 S.W.2d 705 (Tex.Cr.App.1974).  But the contention that " .  .  . it results in more crime in this community; that people do anything to get heroin  .  .  . " takes the argument beyond the type of deduction permitted in *Powell.* And reading the statements together produces a meaning different from that which could legitimately be deduced from the evidence.  The crime increase being referred to is not an increased incidence of heroin sales by this appellant, but rather the crimes against persons and property allegedly committed by people needing to buy the heroin.

This argument falls squarely within the prohibitions of *White v. State,* 492 S.W.2d 488 (Tex.Cr.App.1973) wherein this Court held that a prosecutor's argument that sixty per cent of the crime in Dallas County was attributable to narcotics constituted reversible error.  The only practical difference between the arguments in the two cases is that "sixty per cent" is a more precise figure than the general allegation of "more crime" in Dallas County.

In *Rodriquez v. State,* 520 S.W.2d 778 (Tex.Cr.App.1975), this Court condemned a similar argument outside the record.  On the basis of one sale of heroin to an undercover agent, the prosecutor in *Rodriquez* argued about "the lives [Rodriquez] has touched with the heroin he has helped disburse in this county  .  .  .  He has touched more lives than a killer could do with the heroin he helps disburse."  The extrapolation from the evidence to the effect on others in the county was held to be reversible error.  The argument in the instant case contains a similar extrapolation to facts not in evidence.  To permit this argument would be to permit prosecutors ever after to "deduce from the evidence" that those in possession of heroin are also responsible for many other crimes.

For the foregoing reasons, the conviction is reversed and the cause remanded.

ONION, P. J., and MORRISON, J., join only in Part I of the opinion.

ODOM, J., joins only in Part II of the opinion.

DOUGLAS, J., not participating.

### OPINION ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge.

The heroin in question was contained in State's Exhibits 3, 4 and 5. State's Exhibit 3 was identified.  An objection was made that the chain of evidence had not been established.  The objection was sustained.  The chain of evidence to the three exhibits was then established. When each of these exhibits was offered into evidence appellant's counsel specifically stated on three separate occasions "no objection."  These exhibits were the only ones identified by Dr. Mason, the chemist, as being heroin.  *McGrew v. State,* 523 S.W.2d 679 (Tex.Cr.App.1975), is directly in point. McGrew filed a motion to suppress evi-

dence; it was overruled the day before the trial. When the marihuana in that case was offered, his counsel stated, "Your Honor, we don't have any objections." This Court wrote:

"In view of the express statement of appellant's counsel, nothing is presented for review under the claim that evidence was seized as a result of an illegal search. *Cortez v. State,* 520 S.W.2d 764 (Tex.Cr. App.1975); *Johnson v. State,* 504 S.W.2d 496 (Tex.Cr.App.1974); *Weatherspoon v. State,* 501 S.W.2d 909 (Tex.Cr.App.1973); *Stewart v. State,* 491 S.W.2d 410 (Tex.Cr. App.1973); *Finklea v. State,* 481 S.W.2d 889 (Tex.Cr.App.1972)."

The matter is not properly before us for review.

Appellant contends that the trial court erred in overruling his objection to the prosecutor's argument "that appellant was guilty because a co-defendant was found guilty and sentenced to thirty years in the penitentiary."

The record reflects that the following occurred during the prosecutor's argument at the guilt stage of the trial:

"The facts that apply to this defendant are the same facts that applied to him [James E. Goodman], and he was convicted then, thirty years in the Texas Department of Corrections.

"MR. CHITWOOD [defense attorney]: Your Honor, I am going to object to this on the grounds that there is nothing in evidence to show what facts were testified to back there in February of 1972, and ask it to be withdrawn from the consideration of the jury.

"THE COURT: Jury will recall the evidence, Mr. Chitwood."

In *Verret v. State,* 470 S.W.2d 883 (Tex. Cr.App.1971), this Court quoted from 56 Tex.Jur.2d, Trial, Section 317, page 673:

"An objection to argument must be pressed to the point of procuring a ruling or the objection is waived. And to pro-

tect the record where an objection is passed on provisionally, counsel must procure a final ruling before the conclusion of the trial."

In *Nichols v. State,* 504 S.W.2d 462 (Tex. Cr.App.1974), where the defendant objected to the prosecutor's argument and the court responded, "The jury will have to remember the testimony," this Court held that nothing was presented for review. It follows that nothing is before us for review in the instant case.

Appellant contends that the court erred in overruling his objection to an argument of the prosecutor which was outside the record.

The record reflects that the following occurred during the argument of the prosecutor at the guilt stage of the trial:

"MR. DAVIS [prosecutor]: I think common sense, and certainly a reasonable deduction from the evidence about how heroin is packaged, how it's sold, what it sells for, tells you that it results in more crime in this community; that people do anything to get heroin, that his man—

"MR. CHITWOOD: Your Honor, I again object to this argument here. There is no evidence here whatsoever as to the effect of heroin on crime in Dallas County.

"MR. DAVIS: I will withdraw it.

"THE COURT: Overruled.

"MR. CHITWOOD: Note my exception."

Appellant relies on *White v. State,* 492 S.W.2d 488 (Tex.Cr.App.1973), where in an appeal from a conviction for possession of heroin this Court held that the prosecutor's argument which injected facts not in evidence, that sixty per cent of the crime in Dallas County was attributable to narcotics and that, when arrested, defendant was going "somewhere on up the line to get some more," was of such a prejudicial nature as to deprive defendant of a fair trial.

When Officer Barnett entered the kitchen, appellant was observed "cutting up powder and mixing it with some white

stuff, milk or something." A portion of the substance was recovered and found to contain heroin. Eight small cellophane packets filled with a white substance were seized and found to contain heroin. These packets were described as "dime bags" or "hits" which are sold on the street for ten dollars a package. Empty cellophane wrappers and strips of cellophane tape were on the table where appellant was working and enough substance containing heroin was recovered, from the table to fill seven more "dime bags" or "hit" packages. The argument that the heroin was for sale was a logical deduction from the evidence. *Powell v. State,* 502 S.W.2d 705 (Tex.Cr.App. 1973); *Alejandro v. State,* 493 S.W.2d 230 (Tex.Cr.App.1973). The prosecutor did not argue as to what per cent of the crime in the county was caused by narcotics, as in *White v. State,* supra, but rather that it was "a reasonable deduction from the evidence" that the heroin "results in more crime in this community." It being a reasonable deduction from the evidence that the "hit" packets or "dime bags" of heroin possessed by appellant were for sale on the street leads to the logical conclusion that the possession of same "results in more crime in the community."

 There is no evidence to support prosecutor's argument "that people do anything to get heroin." The question thus becomes whether such argument was so harmful as to require reversal. The evidence of appellant's guilt was overwhelming. No evidence was offered to refute the three officers' testimony that appellant was found in the possession of heroin. The only defensive theory raised by appellant was that the heroin was illegally seized. The punishment having been assessed by the court after the jury returned a verdict of guilty, it cannot be urged that such argument affected the penalty assessed. Whether argument of counsel requires reversal of a judgment of conviction must be resolved on the probable effect it has on the minds of jurors and the facts of each case must be looked to. *Black v. State,* 491

S.W.2d 428 (Tex.Cr.App.1973); *Hodge v. State,* 488 S.W.2d 779 (Tex.Cr.App.1972); *Jett v. State,* 489 S.W.2d 101 (Tex.Cr.App. 1972). Under the facts and circumstances of this case, we do not find the error in the prosecutor's argument to be so harmful as to require reversal.

The State's motion for rehearing is granted. The reversal is set aside and the judgment of conviction is now affirmed.

ROBERTS, J., dissents for the reasons stated in his original opinion.