**Willie Charles WHITE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–83–00154–CR.**

Court of Appeals of Texas, Dallas.

Oct. 2, 1985.

Kerry P. Fitzgerald, Dallas, for appellant.

Henry Wade, Crim. Dist. Atty., Kathi Alyce Drew, Asst. Dist. Atty., Dallas, for appellee.

Before WHITHAM, HOWELL and McCLUNG, JJ.

WHITHAM, Justice.

The court of criminal appeals remanded for further proceedings consistent with its opinion in *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1985). Appellant, Willie Charles White, appeals a conviction for murder. The jury assessed punishment at seventy-five years confinement in the Texas Department of Corrections. Appellant's first seven grounds of error complain of various remarks made by the prosecutor during jury argument. We find no merit in any of these grounds of error. Consequently, we overrule appellant's grounds of error one through seven. In his eighth ground of error appellant contends that the trial court committed fundamental error in submitting the court's instructions on mur-

der in that the instructions did not properly place the burden of proof in the paragraph applying the law of murder to the facts of the case. For the reasons that follow, we conclude that the trial court committed fundamental error. Having found fundamental error in the court's charge, we must apply the holding in *Almanza* in order to determine if there has been egregious harm to the appellant. We conclude that appellant did not suffer egregious harm. Consequently, we overrule appellant's eighth ground of error. Accordingly, we affirm.

In light of our disposition of appellant's first and eighth grounds of error, a full narrative of the evidence is necessary. George Brackens testified that on the evening of May 23, 1982, a graduation party was held for the sister of the decedent, Prescott Allen Martin, at 1850 Angelina. Brackens and the decedent arrived together at the party at about 9:00 p.m. At about 11:30 p.m. or midnight Brackens saw appellant on the porch of the residence arguing with one Don Miller, apparently over appellant's beer being knocked over. Decedent and his brother, Robert Mitchell, intervened, to keep the peace. A fight then ensued between Mitchell and appellant. Appellant ran to a nearby car and said "I have something that will end it." Before appellant reached the trunk of the car, Mitchell caught up with the appellant to try and calm him down. Mitchell told appellant that there was not going to be any fighting at his sister's party. At this time, decedent came and told both of them "[w]ait a minute. I work with him. I can calm him down." All of a sudden, appellant hit the decedent and another fight commenced. Brackens and others separated the men and appellant went with his cousins up the street for about ten or fifteen minutes. Soon thereafter, appellant returned, weaved his way through the crowd at the same location and jumped decedent from behind, striking several blows to the decedent's neck and right side of his body. Decedent caught appellant and slung him around. Blows were exchanged and decedent stumbled off into the dark to the back of a nearby house where he fell to the ground. Brackens then saw decedent's brother, Robert Mitchell, come over to the location and appellant immediately started cutting Mitchell with a knife. Brackens further testified that these events happened so quickly there was no time to warn decedent; and that he did not observe anyone else with a weapon.

James Williams testified that he arrived at the party about 6:00 p.m. and met appellant for the first time at the house. When appellant began bartending duties, Williams left. Later, Williams returned and saw appellant near Don Miller. He heard appellant say "I don't like what's going on; I'm going to do something about it" and then he saw appellant grab Miller and a struggle ensued. Williams then described several struggles involving Miller, Mitchell and decedent. Eventually appellant left. When appellant returned, Williams saw appellant jump on decedent's back and use a knife to slit his throat. Decedent ran to the backyard of a nearby home. Williams followed and heard decedent say that appellant had cut him on the neck. Williams described the assault as a surprise attack without provocation. Williams did not see appellant assault the decedent's brother Robert Mitchell. Williams went to call the police and the paramedics and when Williams returned he found decedent lying on the ground. Williams could not get a heartbeat or pulse. Williams stated that he had known decedent for six or seven months and dated his sister.

Officer Scholl testified that he was on patrol on May 23, 1982, at about 1:00 a.m. when he had occasion to be dispatched to the vicinity of 1850 Angelina Drive in response to a gang fight. While responding to the call, it was increased to a cutting call. As the officer approached the area, preceded by two other police cars, their attention was focused on appellant by persons in the area. Appellant began to run westbound along a sidewalk and was chased by the police until he was arrested in front of 1842 Angelina. The police had

to physically restrain appellant in order to handcuff him.

Officer Paul Elzey testified that he was a patrol officer on the occasion in question and that he participated in appellant's arrest. No knife or gun was seized from appellant's person.

Diane Johnson testified that she attended the party, that she was aware of an argument involving appellant on the front porch and that she then went to appellant's two sisters to solicit their assistance. When she returned she saw a group of people on the porch, including decedent and his brother, walking in the direction of appellant and she was aware that a fight then broke out.

Lee Clark testified that he knew appellant and was with him the day before, and the day of, the alleged offense and that at the time in question appellant was not intoxicated.

Eva Hankins testified that she and her sister attended the party and that as they were leaving Diane Johnson came up and had a conversation with them. They returned to the porch of the residence at which time she saw Don Miller and Willie James Miller fighting appellant. When she and her sister urged appellant to leave, he could not do so because the other persons kept on fighting appellant. During the fighting, decedent hit Eva Hankins. Then Hankins saw Don Miller with a knife cutting appellant and Robert Mitchell. She never saw anyone other than Don Miller and Willie Miller with knives.

Margie Moore testified that she knew appellant and decedent, that they were good friends and worked together and that on the date in question she went to the party with her sister, Eva Hankins. At the party, she saw decedent who had bartended. Appellant arrived at about 11:30 p.m. Eventually she and her sister Eva Hankins walked out on the porch and into the front yard. She then saw appellant walk out onto the porch and saw Don Miller knock a beer out of appellant's hand. An argument arose and eventually appellant and Don Miller stepped off into the front yard. Don Miller took a swing at appellant who ducked and began backing up into the yard. Very soon Don Miller, Robert Mitchell, and the decedent began beating on appellant. Moore saw one Willie James Miller with a knife, about to cut appellant. At this time, Moore pulled out her gun and told Willie Miller that he had better not cut appellant, her brother. Willie Miller was the only person she saw with a knife. When the others finally got off appellant, she and her sister pushed appellant down the street to their aunt's house. She never saw appellant strike the decedent and never saw appellant with a knife. At their aunt's house, she noticed that appellant's hand was cut and intended to take him to the hospital when the police arrived. During this time she observed Willie James Miller and Don Miller in the same house. Each had blood on them and she saw that they changed their respective shirts. Appellant left the residence, and when he saw the police blocking off the road, he went crazy and began hollering and the police chased and arrested him. Moore further testified that as she and her sister led appellant to their aunt's house, Willie James Miller came up and gave appellant his knife but appellant immediately returned it. At this particular point decedent and appellant had all been cut. Moore was certain appellant did not stab the decedent.

Reginal Smith testified that he attended the party and that late in the evening he saw appellant and the decedent engaged in a fight. He stated that appellant without warning attacked the decedent but further testified that he never saw a knife in appellant's hand during the fight with the decedent. He did, however, see appellant with a knife when he was fighting decedent.

Defense exhibit number six was admitted into evidence. Said exhibit reflects the medical treatment for appellant at Parkland Memorial Hospital immediately after he was arrested.

Dr. M.G. Gilliland testified that he was employed with the Dallas County Medical Examiner's office and that on May 23, 1982, at about 2:30 p.m. he performed an autopsy on the decedent which showed that

the decedent died as the result of stab wounds in the neck and in the chest, that the stab wounds were the result of a single bladed knife which was fairly long. Decedent had a blood alcohol content of .13.

In his first ground of error, appellant contends that reversible error occurred during the punishment phase of the trial when the prosecutor in his argument to the jury directly referred to the expectations and demands of the community for a particular result in this cause. The prosecutor argued:

> Now is the—You know, we talk about a pound of flesh. Here's the pound of flesh (indicating photographs). That is a product of this killer's handy work. This is the pound of flesh (indicating photographs); and, you know, the state doesn't—*we are not the ones that want the pound of flesh: it's the community—the community, because we have to protect ourselves from people like that.* [emphasis added].
>
> [Defense counsel]: Your honor, we'll object to that statement. The community has not spoken as to what they do or do not want. It's calling for a conclusion on the part of the State's attorney, as speculation and outside of the record.

The trial court sustained appellant's objection, instructed the jury to disregard, but denied appellant's motion for mistrial. Previously defense counsel argued:

> The State wants its pound of flesh when it asks for ninety-nine or life, plus ten thousand dollars. I submit to you, by your verdict yesterday, you have given the State its pound of flesh in the case styled Willie Charles White, by convicting him of murder, because you have branded this young man for life. He has a brand on his life that will remain as long as he lives, and by your verdict you branded him as a murderer.
>
> I, therefore, submit that the State has received its pound of flesh and that you then should consider the other two purposes of punishment.

We do not read defense counsel's reference to "pound of flesh" to invite the prosecutor's remark as to the community's demands or expectations. Therefore, we consider whether the prosecutor's remark was error and, if error, whether the remark constituted reversible error.

Appellant argues that the prosecutor's remark as to the community's demands or expectations is reversible error. We agree that the remark was improper. In *Prado v. State*, 626 S.W.2d 775, 776 (Tex.Crim. App.1982), the prosecutor argued:

> He's the only person that stands between this young man and the penitentiary. Well, there are twelve of you and him. That makes thirteen and me and everybody else in the community. There are over a million people that stand between him and the penitentiary. They'd want him to go there if they knew what he did. Not just Mr. Topek.

In *Prado*, the court concluded that the remark constituted a demand for a punishment of confinement because of the citizens' desires. The State was asking the jury to lend an ear to the community rather than a voice. *Prado*, 626 S.W.2d at 776. Consequently, the court in *Prado* held that the "prosecutor spoke the community's desires to the jury," 626 S.W.2d at 777, and reversed and remanded without discussion of whether the error was harmless.

■ In the present case we conclude that the prosecutor's remark constituted a demand for a punishment of confinement because of the community's desires. The prosecutor argued in effect that the community wants its pound of flesh in the form of ninety-nine years or life confinement in the penitentiary. Therefore, the State was asking the jury to lend an ear to the community rather than a voice. Thus, we conclude that in the present case the prosecutor, as in *Prado*, spoke the community's desires to the jury. Accordingly, we hold that the prosecutor's remark was improper.

In *Prado*, however, the trial court overruled the objection. In the present case, the trial court sustained the objection, instructed the jury to disregard, but denied motion for a new trial. Consequently, we must determine if the instruction cured the

error. We begin the inquiry by noting the holding in *Bothwell v. State*, 500 S.W.2d 128, 130 (Tex.Crim.App.1973):

> We have held in the past that a jury argument referring to the expectations or demands of the community for a particular result constitutes reversible error, and cannot be cured by instruction to the jury to disregard. [citations omitted].

The holding in *Bothwell* is plain enough. Therefore, since appellant does not challenge the sufficiency of the evidence, we could follow *Bothwell*, sustain appellant's first ground of error and reverse and remand. To do so, however, requires us to ignore dicta in a footnote in the later case of *Curtis v. State*, 640 S.W.2d 615, 618–19 (Tex.Crim.App.1982). In the footnote, the court focused on a single sentence of five words in the prosecutor's argument during the punishment phase. The five word remark was: "Your community demands the maximum."

In *Curtis*, the accused made no objection to the prosecutor's remark and the court held that nothing was presented for review. 640 S.W.2d at 618. In an extensive footnote four, however, the court addressed the issue presented by the remark. In doing so, *Curtis* referred to the above holding in *Bothwell*. Without indicating that *Bothwell* should be overruled, *Curtis* concluded that the single sentence of five words, though improper, did not affect the punishment assessed by the jury. We quote footnote four from *Curtis*:

> As with most rules such as this, there is an exception: Failure to object timely does not waive an error created by an argument of the prosecutor which is "so prejudicial that no instruction could cure the harm," *id.*, [580 S.W.2d 815 (Tex.Cr.App.1979).] at 823. Sometimes coming with (sic) that exception is jury argument stating community demands for a particular result. *Bothwell v. State*, 500 S.W.2d 128, 130 (Tex.Crim.App.1973).
>
> In final argument during the punishment phase in the case at bar, the prosecutor rejected the notion of probation for appellant; asked the jury to "send a mes-

sage to the people of the community" that "we are not going to tolerate this stuff ... and if we catch you we are going to send you away for the rest of your life" because that is how long the victim "is going to be scarred, nothing less;" made the jury "part of law enforcement in the community right now;" and urge it "to protect society from people like him." Then, climatically, the assistant district attorney concluded:

> "The maximum, Ladies and Gentlemen, the State demands the maximum. *Your community demands the maximum.* Your conscience demands the maximum. You are the only people who can do it, and when you return with your verdict you can feel good about it. You can feel good about that you have done something for law enforcement in Midland County ... That is what we want, the maximum. Anything less and you might as well slap his hands. Thank you, Your Honor." [Emphasis added]

Except for the underscored sentence of five words, the instant argument is reminiscent of the final argument on punishment made of the prosecutor in *Duffy v. State*, 567 S.W.2d 197, 205–206 (Tex.Crim.App.1978). Though there was objection to injecting "improper references to community demands and expectations," the Court found no error in overruling the objection in that the argument was "a proper plea for law enforcement," *id.*, at 206. Looking to the facts of the case at bar, we resolve the question of whether reversal is called for "on the probable effect it has on the minds of jurors," *Mayberry v. State*, 532 S.W.2d 80, 85 (Tex.Crim.App.1976) (Opinion on Rehearing), concluding that the single sentence of five words, though improper, did not affect the punishment assessed by the jury.

640 S.W.2d at 618–19 n. 4 (emphasis in original).

Thus, *Curtis*, albeit dicta, would have us consider the question in light of the probable effect the prosecutor's remark had on

the minds of the jurors. We conclude that the court of criminal appeals in *Curtis* was telling us that a jury argument referring to the expectations or demands of the community for a particular result can be cured by an instruction and does not call for automatic reversal. We reach this conclusion because there was no need for such an extensive footnote of dicta in view of the court's holding that appellant's ground of error challenging the prosecutor's remark presented nothing for review. We do not believe that the court of criminal appeals would have expended the judicial time and effort required in writing footnote four in *Curtis* unless it was to have significance. Consequently, we respectfully decline to follow *Bothwell.* In this connection, we recognize that as an intermediate court, we are bound to follow the decisions of the court of criminal appeals in criminal cases. *Patterson v. State,* 654 S.W.2d 825, 827 (Tex.App.—Dallas 1983, pet. ref'd.). For the above reasons, however, we treat *Curtis* as overruling the holding in *Bothwell.*

■ Therefore, looking to the facts of the present case, we must consider whether the prosecutor's remark calls for reversal "on the probable effect it [had] on the minds of jurors." 640 S.W.2d at 619. Appellant in the present case admitted to four convictions for possession of marihuana. One non-police citizen witness testified that appellant had a bad reputation. Two witnesses testified that appellant had a good reputation. Appellant's mother and appellant testified as to his employment and living arrangements. Earlier, we provided a narrative of the record for evidence of appellant's guilt. In view of the specific facts of the present case and the overwhelming evidence of appellant's guilt combined with the evidence of his prior record and the State's reputation witness, we conclude that the prosecutor's remark had no probable effect on the minds of the jurors. Consequently, we conclude further that the prosecutor's remark did not affect the jury's assessment of seventy-five years punishment for this murder. Accordingly, we hold that the error could be cured by an instruction and that the error was not so

harmful as to require reversal. We overrule appellant's first ground of error.

■ In his second ground of error, appellant contends that the prosecutor committed reversible error during jury argument when he argued matters outside the record, which resulted in an unjustified personal attack upon defense counsel. During the punishment phase of the trial the prosecutor argued:

> Now, what makes a killer is not a lack of intelligence or education. What we have here is something missing in the character, something missing that creates, in the heart of a man like this Defendant, the capability to kill so senselessly and so brutally. That's what's missing, not a lack of education. This man thinks differently than we do. He acts differently, and he kills. It has nothing to do with education or environment, or anything else; so, please, don't let Mr. Cunningham play a shell game and move your attention over here, when it should be—

The trial court sustained appellant's objection, instructed the jury to disregard, but denied appellant's motion for mistrial. Appellant argues that the above argument was an unjustifiable attack on the defendant through defense counsel and was outside the record. Generally, an instruction to disregard will cure error caused by improper jury argument unless the remark is so inflammatory that its "prejudicial effect cannot reasonably be removed by such an admonition." *Garza v. State,* 622 S.W.2d 85, 93 (Tex.Crim.App.1981). We conclude that the argument complained of was not so prejudicial that it could not have been cured by the court's instruction to disregard and that the trial court properly overruled the motion for mistrial. We overrule appellant's second ground of error.

■ In his third ground of error, appellant contends that the prosecutor committed reversible error in his jury argument during the punishment hearing when he referred to matters not based on any evi-

dence and totally outside of the record. The prosecutor remarked:

> Don't let Mr. Cunningham put the members of this jury on some kind of a guilt trip, that you ought to feel sorry for him because of his intelligence level, lack of education. I mean, hundreds of thousands of other people have made it out there, and have restrained themselves, and have not gone out and committed a brutal, senseless murder.

Appellant's objection was overruled. Prior to the prosecutor's remarks, defense counsel argued:

> I submit to you that Willie Charles White is a victim, along with Prescott Allen Martin, and that you should not forget this second victim, and I think you saw, while he was on the stand, and from what you have seen and heard, *that he is a victim of his environment and his circumstances: a man with limited education,* but at least we know that he will work, and if he wouldn't work, the State would have brought you somebody that would have said that he wouldn't work. [emphasis added].

We conclude that the argument complained of was clearly invited and thus proper. *Alejandro v. State,* 493 S.W.2d 230, 231 (Tex.Crim.App.1973); *Turner v. State,* 482 S.W.2d 277, 279 (Tex.Crim.App.1972). We overrule appellant's third ground of error.

■ In his fourth ground of error, appellant contends that the prosecutor committed reversible error during jury argument on guilt or innocence by injecting a personal opinion as to facts not based on any evidence and by asking the jury to speculate, to the prejudice of appellant. The prosecutor remarked and appellant objected as follows:

> [PROSECUTOR]: Now, is it any wonder that people are reluctant to get involved in the criminal justice system, when they take that witness stand—
>
> [DEFENSE COUNSEL]: Object to the statement as "any wonder why people are reluctant to get on the witness stand," as speculation. Also, it calls for

a conclusion as to why people do or do not take the witness stand.

Appellant's objection was overruled. Appellant argues that the prosecutor's argument was not based on any evidence and was totally outside the record and basically injected into the trial the prosecutor's personal opinion. We conclude that the prosecutor's argument exceeded the areas of permissible jury argument as enunciated in *Alejandro* and that the trial court erred in overruling the objection. Therefore, we next consider whether the error was so harmful as to require reversal. Reversible error occurs only if the argument: (1) is manifestly improper, harmful and prejudicial; or (2) is violative of a statute; or (3) injects new and harmful facts into the case. *Thomas v. State,* 621 S.W.2d 158, 164. We conclude that the prosecutor's remarks constitute none of these three circumstances. Therefore, we overrule appellant's fourth ground of error.

■ In his fifth ground of error, appellant contends that the prosecutor committed reversible error during his jury argument on guilt or innocence when he injected his personal opinion on the matter and argued outside of the record. The prosecutor argued:

> You know, sometimes I get to this point in my argument, and I'm about to sit down, but I know and I believe, based on the evidence, that there should be no doubt, much less believable, and there may be someone sitting on the panel who says, "I know the evidence, beyond any doubt, shows that he is guilty, and I know my oath tells me, as a juror, that I must render a true and fair verdict, based on the law and the evidence; I'm still hesitating." I'm telling you now, to anyone who may think that, this man is extremely dangerous.

The trial court sustained appellant's objection, instructed the jury to disregard, but denied appellant's motion for mistrial. For the reasons expressed in ground of error two, we conclude that the trial court properly overruled the motion for mistrial.

*Garza,* 622 S.W.2d at 93. We overrule appellant's fifth ground of error.

In his sixth and seventh grounds of error, appellant contends that the prosecutor committed reversible error in his argument to the jury on guilt or innocence when he argued matters outside of the record in an attempt to unjustifiably inflame the minds of the jury. The prosecutor argued as follows:

> [PROSECUTOR]: I believe—and perhaps I didn't, but I believe I said that based on the evidence that you have heard about the manner in which this crime was committed, about the way this Defendant savagely and brutally jumped on Prescott Allen Martin's back and butchered him, that's the evidence that shows—
>
> [DEFENSE COUNSEL]: Your Honor, I hate to keep interrupting the Prosecutor, but he is outside of the record. He is making prejudicial and inflammatory remarks, when he used the word "butcher".

Appellant's objection was overruled. We conclude that the prosecutor's remark was a reasonable deduction from the evidence and, therefore, was proper. *Alejandro* at 231. We overrule appellant's sixth and seventh grounds of error.

In his eighth ground of error, appellant contends that the trial court committed fundamental error in submitting the court's instructions on murder in that the instructions did not properly place the burden of proof in the paragraph applying the law of murder to the facts of the case. In the present case, the jury was instructed on murder, voluntary manslaughter, and aggravated assault. Although it might be argued that the evidence is insufficient to support the defensive issue that appellant was acting under the immediate influence of sudden passion arising from an adequate cause, we treat the evidence as sufficient to raise this defensive issue. The charge made application of the law to the facts with respect to this defensive issue as follows:

> Now therefore, if you find and believe from the evidence, beyond a reasonable doubt, that on or about the 23rd day of May, 1982, in Dallas County, Texas, the defendant, Willie Charles White, did intentionally or knowingly cause the death of Prescott Allen Martin, an individual, by stabbing the said Prescott Allen Martin with a knife, as alleged in the indictment, then you will find the defendant guilty of the offense of *murder,* as charged in the indictment. [emphasis ours].

> \* \* \* \* \* \*

> Now therefore, if you find and believe from the evidence, beyond a reasonable doubt, that on or about the 23rd day of May, 1982, in Dallas County, Texas, the defendant, Willie Charles White, did intentionally or knowingly cause the death of Prescott Allen Martin, an individual, by stabbing the said Prescott Allen Martin with a knife, as alleged in the indictment, but you further find and believe from all the facts and circumstances in evidence in this case that the defendant, in killing the deceased, if he did, *acted under the immediate influence of sudden passion arising from an adequate cause,* then you will find the defendant guilty of the offense of *voluntary manslaughter,* as included in the indictment. [emphasis ours].

Thus, we see that the trial court charged this defensive issue as an element of voluntary manslaughter rather than murder. Appellant argues that the defensive issue of sudden passion should not have been omitted from the paragraph of murder and placed only in the voluntary manslaughter paragraph. Under recent holdings of the court of criminal appeals, we are compelled to agree with appellant. That death was caused under the immediate influence of sudden passion arising from adequate cause is not an element of voluntary manslaughter, but is instead in the nature of a defense to murder that reduces it to voluntary manslaughter. *Schoelman v. State,* 644 S.W.2d 727, 733 (Tex.Crim.App.1983). If raised by the evidence, the State must

prove the *absence* of such influence beyond a reasonable doubt to establish murder. *Braudrick v. State,* 572 S.W.2d 709, 711 (Tex.Crim.App.1978), *cert. denied,* 440 U.S. 923, 99 S.Ct. 1252, 59 L.Ed.2d 477 (1979). In *Cobarrubio v. State,* 675 S.W.2d 749 (Tex.Crim.App.1983), there was evidence that the killing was provoked by sudden passion and the jury was charged on murder and voluntary manslaughter. The application paragraph for murder, however, failed to include language that the State must prove beyond a reasonable doubt the absence of sudden passion. The court reversed, noting that the burden of proving the lack of sudden passion must be placed in the charge applying the law of murder to the facts. The next month in *Jenkins v. State,* 688 S.W.2d 504 (Tex.Crim.App.1983) (rehearing granted) it was held *fundamental* error not to charge as prescribed in *Cobarrubio.* In *Jenkins,* as in the present case, the defendant was charged with murder, voluntary manslaughter and aggravated assault, however, the murder application paragraph failed to include the sudden passion language.

At page eight of the slip opinion in *Jenkins* appears the rationale for the court's holding in *Cobarrubio* and *Jenkins:*

> In *Cobarrubio v. State, supra,* this Court stated at p. 752 of the slip opinion:
> With the defensive issue of sudden passion deleted from the paragraph of murder and placed *only* in the voluntary manslaughter paragraph as it is here, there exists a decided likelihood that a jury would affirmatively answer the murder paragraph, never having considered the defensive issue of sudden passion which would reduce the offense of murder to the lesser included offense of voluntary manslaughter. Thus, if the jurors followed the court's

instructions to the letter—indeed, we must presume they did—the State's burden of proof was significantly diminished and appellant was denied an opportunity to have the jury determine his guilt on the issue of murder as interpreted by the Court in *Braudrick, supra.* Under these circumstances, this error precipitated a denial of due process of law in the most fundamental sense.

Accordingly, we conclude that the trial court committed fundamental error in failing to charge as prescribed in *Cobarrubio* and *Jenkins.*

Having found fundamental error in the court's charge, we must apply the holding in *Almanza* in order to determine if there has been egregious harm to appellant.[1] TEX.CODE CRIM.PROC.ANN. art. 36.19 (Vernon 1981) reads:

> Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles [pertaining to the trial court's charge] has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial.

*Almanza* instructs that whether objection to the charge was made or fundamental error claimed "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza,* 668 S.W.2d at 171. In view of the importance attached to "the state of the

---

**1.** In *Mullaney v. Wilbur,* 421 U.S. 684, 704, 95 S.Ct. 1881, 1892, 44 L.Ed.2d 508 (1975), the court held "that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." In the present

case, however, appellant failed to raise this constitutional issue. Consequently, we decline to address unraised constitutional issues and we dispose of the present case under this State's standard of appellate review as given us in *Almanza.*

evidence, including the contested issues and weight of probative evidence" by *Almanza* in assaying the actual degree of harm to the accused, we refer the reader to our earlier summary of the evidence.

Obedient to *Almanza*, we must "assay" the actual degree of harm to appellant resulting from the misplacement in the charge of the defensive issue that appellant was acting under the immediate influence of sudden passion arising from an adequate cause. "Assay" means "examination and determination as to characteristics (as weight, measure, or quality)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 130 (3d ed. 1981). Thus, we conclude that we are, among other matters, called upon as appellate judges to examine and weigh "the state of the evidence, including the contested issues and weight of probative evidence." In short, we are to make an independent evaluation of the evidence supporting the defensive issue raised and determine if that evidence would have persuaded the jury that appellant was not guilty of murder if the defensive issue had been correctly positioned in the charge.

Assaying "the state of the evidence, including the contested issues and weight of probative evidence," we conclude that the jury would not believe that appellant was acting under the immediate influence of sudden passion arising from an adequate cause. We reach this conclusion in light of the undisputed evidence that after the initial confrontation between appellant and deceased, appellant left the party and went up the street to his aunt's house for ten or fifteen minutes, then returned to the party, jumped decedent from behind, striking him with a knife. We reason that the jury would calculate appellant's ten or fifteen minute visit to his aunt's house as a sufficient "cooling off" period to negate the *immediate* influence of sudden passion experienced by appellant arising from his previous fight with decedent. Consequently, we conclude that the evidence would fail to persuade the jury that appellant was not guilty of murder even if the defensive issue had been cor-

rectly positioned in the charge. Thus, as to *Almanza's* evidentiary concerns, nothing conspicuously bad happened to appellant because the trial court misplaced the defensive issue in the charge.

Moreover, we conclude that, conformable to *Almanza*, we are also called upon to examine and measure (1) the entire jury charge, (2) the argument of counsel and (3) any other relevant information revealed by the record of the trial as a whole in order to determine the actual degree of harm to appellant resulting from the misplacement in the charge of the defensive issue that appellant was acting under the immediate influence of sudden passion arising from an adequate cause. We have examined and measured these three non-evidentiary areas of concern and find nothing suggesting that anything conspicuously bad happened to appellant because the trial court misplaced the defensive issue in the charge.

Indeed, looking to the argument of counsel, we conclude that the defensive issue that appellant was acting under the immediate influence of sudden passion arising from an adequate cause was of no importance to appellant. We reach this conclusion from our reading of the entire jury argument at the guilt or innocence stage of the trial. In closing argument, the prosecutor remarked on defense counsel's failure to argue the defensive issue when the prosecutor stated, that "[n]o, I did it but it was self defense, under the immediate influence of sudden passion arising from an adequate cause." The prosecutor correctly noted defense counsel's failure to argue the defensive issue. During argument, defense counsel never directed the jury's attention to any testimony in support of the defensive issue and never presented the defensive issue to the jury. True, on one occasion defense counsel referred to "passion":

I think [the prosecutor] said that every murder is done in passion, or similar words. I don't think I need to rebut that, because I think that if you think about it—and you shouldn't have to think

about it—a hired killer, there's no passion involved. He's doing it for money— However, instead of pursuing the opportunity given by the prosecutor to argue that certainly in this case appellant had acted under the immediate influence of sudden passion, defense counsel went on to other matters. Thus, we conclude that, since the defensive issue was of no importance to appellant, its position in the charge would be of no importance in the jury's deliberations.

Therefore, having assayed the actual degree of harm to appellant as required by *Almanza,* we conclude that appellant did not suffer egregious harm. Accordingly, we conclude that the trial court's error does not require reversal. We overrule appellant's eighth ground of error.

Affirmed.

HOWELL, J., dissents.

HOWELL, Justice, dissenting.

I dissent. This Court is required to follow the decisions of the Texas Court of Criminal Appeals. Although the majority has given lip service to the principle, it has turned aside from that principle on the basis of a footnote in a panel opinion. It is not our function to surmise whether or not a decision of the Texas Court of Criminal Appeals has been overruled. That court is well able to tell us in due season.

This case is controlled by the *Bothwell* line of cases. *Bothwell v. State,* 500 S.W.2d 128 (Tex.Crim.App.1973). This writer does not believe that a panel of the Court of Criminal Appeals either could or would undertake to overrule an established line of decisions of that court. Most certainly, the panel decision in *Curtis v. State,* 640 S.W.2d 615 (Tex.Crim.App.1982) did not undertake to overrule *Bothwell.* The most that *Curtis* attempted to do was carve out an exception to *Bothwell.* The conclusion that *Bothwell* has been overruled comes not from the *Curtis* court but from a panel majority in this court of appeals.

*Curtis* undertook to distinguish *Bothwell* on the basis of the innocuousness of the remark and the defendant's failure to object. The appellant before us did object, the objection was sustained, the jury was instructed to disregard and appellant's motion for mistrial was overruled. *Curtis* is not comparable.

Neither can the error be dismissed as harmless. Our record shows a crime of violence, and a conviction therefor would warrant stern punishment. However, the facts would not necessarily call for maximum punishment considering that there is no evidence of deliberate plotting and no evidence of any motive for personal gain through commission of this ultimate crime, only the inexplicable eruption of violence.

Nor does the appellant's prior record cry out of a "maximum" sentence. Appellant's prior criminal history shows repeated marijuana possession convictions and nothing further—no crimes of violence. In specific testimony as to a bad reputation, which might refer to nothing more than the marijuana convictions, adds little justification for a seventy-five year sentence.

As a practical matter, appellant did receive a maximum sentence, or very close to the equivalent. Seventy-five years is well beyond the life expectancy of this adult male. The sentence could have been life or it could have been ninety-nine years, but what difference? Any distinction between the sentence received and the maximum permissible is small indeed. The case in hand does not fit the *Curtis* exception. *Bothwell* controls.

The majority has further overlooked the prophylactic principles underlying such cases as *Bothwell.* Those who would exercise misplaced zeal in the high calling to represent the State of Texas before the bar of justice cannot be adequately restrained by the issuance of harmless error affirmances. At a minimum, the State, having erred, and unnecessarily so, should be burdened to strictly demonstrate that the error was indeed harmless. This, it cannot do.

I would further reverse on the basis of cumulative error. As well indicated by the majority opinion, the State exceeded the

bounds of proper argument not once, but again and again. While the trial court sustained repeated objections and repeatedly admonished the jury to disregard, the likelihood that the jury would do so was successively diminished. This defendant's right to a fundamentally fair trial was violated. He must be tried again.