**Opinion filed August 31, 2022**



## In The

# Eleventh Court of Appeals

_____

## No. 11-19-00232-CR

_____

### LEONCIO ESPINOZA, JR., Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 70th District Court**
**Ector County, Texas**
**Trial Court Cause No. A-18-1422-CR**

### M E M O R A N D U M   O P I N I O N

Leoncio Espinoza, Jr. was charged by eleven indictments with sexual assault of a child. The indictments alleged the same victim, SR, Appellant's stepdaughter. Each of the indictments was filed in a separate case in the trial court. However, the trial court subsequently entered an order that consolidated the eleven separate cases "*for the purposes of trial.*" (Emphasis in original).

The case proceeded to a jury trial on eleven "counts" of sexual assault of a child.[1]  The jury convicted Appellant on nine of the eleven charges and acquitted him on the two remaining charges (Charge Nos. Three and Four, trial court cause nos. A-18-1424-CR and A-18-1426-CR).  The jury assessed a sentence of confinement for a term of twenty years in the Institutional Division of the Texas Department of Criminal Justice for each conviction.

The State filed a request to cumulate sentences under Section 3.03 of the Penal Code.  *See* TEX. PENAL CODE ANN. § 3.03 (West Supp. 2021).  The trial court granted the State's request to cumulate sentences.  The trial court entered nine judgments of conviction, eight of which provided that the respective sentence was to run consecutively to one of Appellant's other sentences.  The trial court also entered two judgments of acquittal.  Each of the eleven judgments bears a different trial court cause number.  In six issues, Appellant challenges his convictions and sentences. We affirm.

*Background Facts*

The indictments charged Appellant with the following conduct:

| | |
|---|---|
| Charge One | on or about November 12, 2017, penile penetration of SR's sexual organ (Trial Court Cause No. A-18-1422-CR) |
| Charge Two | on or about December 1, 2017, penile penetration of SR's sexual organ (Trial Court Cause No. A-18-1430-CR) |
| Charge Three | on or about January 1, 2018, penile penetration of SR's mouth (Trial Court Cause No. A-18-1424-CR) |

---

[1]The trial court referred to the individual charges as "counts" at trial.  As recently noted by the Texas Court of Criminal Appeals, "a 'count' is the statutory method of alleging a separate offense in *an indictment*." *Jefferson v. State*, No. PD-0677-21, 2022 WL 2961846, at *3 (Tex. Crim. App. July 27, 2022) (emphasis added) (citing *Martinez v. State*, 225 S.W.3d 550, 554 (Tex. Crim. App. 2007)).  Accordingly, we will use the term "charge" to refer to each offense labeled as a "count" in the trial court's charge to the jury.

| | |
|---|---|
| Charge Four | on or about February 1, 2018, penile penetration of SR's mouth (Trial Court Cause No. A-18-1426-CR) |
| Charge Five | on or about February 1, 2018, penile penetration of SR's anus (Trial Court Cause No. A-18-1427-CR) |
| Charge Six | on or about March 1, 2018, penile penetration of SR's sexual organ (Trial Court Cause No. A-18-1429-CR) |
| Charge Seven | on or about March 1, 2018, penile penetration of SR's anus (Trial Court Cause No. A-18-1431-CR) |
| Charge Eight | on or about May 1, 2018, penile penetration of SR's anus (Trial Court Cause No. A-18-1423-CR) |
| Charge Nine | on or about May 1, 2018, penile penetration of SR's sexual organ (Trial Court Cause No. A-18-1425-CR) |
| Charge Ten | on or about May 16, 2018, penile penetration of SR's anus (Trial Court Cause No. A-18-1428-CR) |
| Charge Eleven | on or about May 16, 2018, penile penetration of SR's sexual organ (Trial Court Cause No. A-18-1432-CR) |

SR was sixteen years of age at the time of trial. She grew up in the area of Rio Hondo and San Benito. When she was fourteen, SR moved to Odessa with her family, including Appellant, her stepfather. SR testified that Appellant met her mother when SR was one year old and that Appellant and SR's mother have been together since then.

SR testified that Appellant began sexually abusing her when she was five years old and lived in Rio Hondo. The first episode that she recounted occurred when Appellant picked her up from school and took her to a hill where he started to

3

touch her chest and private areas over her clothes. SR testified about another incident, which occurred when she was six, in which Appellant placed his penis inside her mouth while her mother was taking a shower. SR testified that Appellant sexually abused her at least twice a week when she was younger. She testified that when she was around nine, Appellant began trying to have intercourse with her.

SR further testified that she found out that Appellant was her stepfather when she was eleven, at which time he told her that it was okay for him to have sex with her because he was not her biological father. SR also testified that she was scared to tell anyone of the abuse because Appellant threatened SR and told her that her mother might get deported or that he would go to jail.

When the family moved to Odessa, SR thought the abuse was going to stop. But when she told Appellant that she wanted to change schools, Appellant told her that she would have to have intercourse with him. Appellant subsequently picked her up from school one day and drove her to the parking lot of a fitness gym in Odessa. There, he covered the windows of his pickup and told SR to take off her clothes. SR testified that, when she refused, Appellant began taking her clothes off. SR testified that Appellant then had intercourse with her to an extent that he had not previously done. This is the conduct upon which Charge One was based. She testified that Appellant then inserted his penis in her anus. Afterwards, Appellant took SR to a Burger King so that she could clean up in the restroom.

The next event that SR described occurred at the family's trailer. SR accompanied her mother to a neighborhood bible study. SR's mother sent SR home to their trailer with a plate of food for Appellant. SR testified that Appellant told her to stay outside of the trailer and to take her pants off. He then took her pants off and placed his penis inside of her vagina and anus. This is the conduct upon which Charge Two was based.

4

The next occasion that SR testified about occurred when Appellant took SR out of school and then took her to the Westerner Motel in Odessa. She testified that this occurred in the second week of January 2018. Appellant told SR to duck down in the pickup as he rented the room. Appellant then drove his pickup to the room that he rented. After he went inside the room, Appellant would signal for SR to run into the room. SR testified that Appellant took her to the Westerner Motel on seven occasions and that during each time at the hotel, he would penetrate her vagina, anus, and mouth with his penis. Charges Five through Eleven were based on conduct that occurred at the Westerner Motel.

The owner and operator of the hotel identified Appellant as a person that had rented rooms at his hotel. Detective Javier Gonzales of the Odessa Police Department testified that he obtained recordings taken in May 2018 from the video surveillance system at the hotel. He obtained recordings from May 11, 2018, and May 16, 2018, that depicted Appellant renting a room at the motel for a short period of time.[2] Detective Gonzales also identified Appellant's pickup from the recordings based upon a distinctive red mark on the hood of Appellant's pickup. Detective Gonzales testified that an unidentified person accompanied Appellant both times into the room that he rented at the motel.

SR testified that Appellant communicated with her through Facebook Messenger and that he would either delete the messages from her phone or would instruct her to delete the messages. SR sometimes had her boyfriend keep screenshots of the messages for her. One text message from Appellant was admitted into evidence wherein he told SR that he had been "trying to grab [her] [slang words for buttocks and breasts]." SR also testified that Appellant requested that she send

---

[2]Detective Gonzales testified that he was not able to obtain earlier recordings because of the surveillance system's storage capacity.

him photographs of herself in various states of undress. She estimated that she took 100 photographs of herself that she sent to Appellant via Facebook Messenger.

SR testified that Appellant started asking for the photographs when she was fifteen and that he would tell her how she should pose for the photographs. The State offered approximately fifty photographs into evidence depicting SR without clothing. These photographs were recovered from Appellant's phone. SR identified herself as the female depicted in the photographs. Detective Gonzales noted that SR had suffered an injury to one of her breasts that confirmed her identity in some of the photographs that did not show her face. One photograph depicted Appellant naked with a naked female. SR testified that she is the female in this photograph and that it was from a video of them that Appellant took at the motel.

Appellant's prosecution came about as a result of a time in May 2018 when SR's boyfriend was looking at items on SR's phone. The boyfriend came across a naked photo of SR on her phone. When he confronted SR about the photo, she told him that Appellant had been sexually assaulting her. SR's boyfriend reported the abuse to his mother, and she reported it to the police.

Lisa Montoya performed a sexual assault examination on SR on May 23, 2018. She observed a small, healed scar on SR's vagina and some healed scars in her anus. Montoya testified that the anal scars were unusual and that they were consistent with SR's reported abuse.

Appellant testified during the guilt/innocence phase of trial. He testified that he never molested SR or touched her in an inappropriate manner. Appellant also testified that he has never seen SR's body. He denied taking the explicit photographs of SR, and he testified that he had never seen them despite the fact that they were recovered from his phone. With respect to the photograph depicting himself naked with a naked female, Appellant testified that the female in the photograph was his

6

wife.[3]  Appellant testified that he could not have written the text message that was admitted into evidence because he does not know how to text in English.  Appellant also denied ever being at the Westerner Motel in Odessa, and he stated that the pickup on the surveillance videos was not his.

*Analysis*

We note at the outset that this case presents a docketing dilemma.  The trial court entered nine judgments of conviction bearing nine separate cause numbers.  However, the nine separately numbered judgments are contained in a single clerk's record that only bears trial court cause no. A-18-1422-CR.  The "filed" stamps on eight of these judgments do not reflect that they were filed in trial court cause no. A-18-1422-CR.  Furthermore, we have a single reporter's record that only bears trial court cause no. A-18-1422-CR.

It appears that Appellant only filed a single notice of appeal, which was filed in trial court cause no. A-18-1422-CR, yet he appeals all nine convictions that bear separate cause numbers.  In the interest of justice, we will treat Appellant's notice of appeal filed in trial court cause no. A-18-1422-CR to extend to trial court cause nos. A-18-1423-CR, A-18-1425-CR, A-18-1427-CR, A-18-1428-CR, A-18-1429-CR, A-18-1430-CR, A-18-1431-CR, and A-18-1432-CR.  *See Gonzales v. State*, 421 S.W.3d 674, 674–75 (Tex. Crim. App. 2014).  In this regard, Appellant obviously sought to appeal all nine convictions, and at the time that the notice of appeal was filed, it appears the causes remained consolidated into cause no. A-18-1422-CR because the judgments of convictions had not been entered in the other trial court cause numbers.[4]

---

[3]Appellant called his wife as a defense witness before his testimony.  Appellant's trial counsel did not ask Appellant's wife if she was the female depicted in the photo.

[4]Appellant's notice of appeal was filed approximately one hour before the judgments of convictions were entered in trial court cause numbers A-18-1423-CR, A-18-1425-CR, A-18-1427-CR, A-18-1428-CR, A-18-1429-CR, A-18-1430-CR, A-18-1431-CR, and A-18-1432-CR.

The better practice would have been for Appellant to have filed a separate notice of appeal in each trial court cause number. Alternatively, the trial court clerk should have notified this court when Appellant filed a single notice of appeal that there were judgments of conviction bearing multiple trial court cause numbers. This step would have permitted this court to notify Appellant that he needed to file notices of appeal in each cause number. It would have also accommodated the filing of separate appeals for each trial court cause number at the outset, which would have been the proper course of action.

*Sufficiency of the Evidence*

In his sixth issue, Appellant challenges the sufficiency of the evidence supporting his convictions. He contends that the jury "was presented with nothing more than mere speculations and factually unsupported inferences and presumptions." He contends that the motel owner's in-court identification of Appellant was suspect and that the State failed to corroborate many of the details reported by SR with school records of times and dates that Appellant withdrew her from school. He also contends that the police investigation was incomplete and inconclusive.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted.

8

*Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Instead, appellate courts must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

A person commits the offense of sexual assault if he intentionally or knowingly causes the penetration of the anus or female sexual organ of a child by any means. TEX. PENAL CODE ANN. § 22.011(a)(2)(A). A "child" is statutorily defined as "a person younger than 17 years of age." *Id*. § 22.011(c)(1). The uncorroborated testimony of a child victim is alone sufficient to support a conviction

9

for sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2021); *Chapman v. State*, 349 S.W.3d 241, 245 (Tex. App.—Eastland 2011, pet. ref'd).

When conducting an evidentiary review, "[w]e do not review the sufficiency of the police investigation; we review the evidence presented at trial." *Quinonez v. State*, No. 06-07-00016-CR, 2007 WL 2608833, at *4 (Tex. App.—Texarkana Sept. 12, 2007, pet. ref'd) (mem. op., not designated for publication). "[W]e do not consider what evidence the State could have or even should have presented." *Id.* Furthermore, we do not speculate about the evidence that the State did not present. *McLemore v. State*, No. 05-15-00160-CR, 2015 WL 9591398, at *3 (Tex. App.—Dallas Dec. 31, 2015, no pet.) (mem. op., not designated for publication) (citing *Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012)).

With respect to Appellant's contention that his convictions were based on speculation, a jury is prohibited from drawing conclusions based on speculation. *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 15). "Speculation is mere theorizing or guessing about the possible meaning of the facts and evidence presented." *Id.* (quoting *Hooper*, 214 S.W.3d at 16). Conversely, "an inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id.* "Juries are permitted to draw multiple reasonable inferences from the evidence as long as each inference is supported by the evidence presented at trial[.]" *Id.* (citing *Hooper*, 214 S.W.3d at 15).

SR, the victim of the offense, testified that Appellant sexually assaulted her on numerous occasions. This evidence did not require the jury to speculate on its meaning. Furthermore, her testimony alone was sufficient to support Appellant's convictions—without corroboration. *See* CRIM. PROC. art. 38.07. However, there was corroboration of her testimony in the form of naked photos of herself on Appellant's phone, including one photo depicting both her and Appellant without

clothing. Furthermore, there was medical evidence in the form of anal scarring as well as surveillance videos from the hotel for the jury to consider. The jury's decision to believe SR's testimony and disbelieve Appellant's denials constitutes a credibility determination to which we defer to the jury to resolve. *See Brooks*, 323 S.W.3d at 899. Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the essential elements of the offenses for which Appellant was convicted. *See Jackson*, 443 U.S. at 319. We overrule Appellant's sixth issue.

*Oath to Jury Venire*

In his first issue, Appellant contends that the trial court erred when it failed to administer the statutorily required oath to the jury venire before the beginning of voir dire. *See* TEX. CODE CRIM. PROC. ANN. art. 35.02 (West 2006). The Texas Code of Criminal Procedure requires the trial court to administer an oath to the jury venire panel before the beginning of voir dire.[5] CRIM. PROC. art. 35.02. This provision ensures that any statements made by prospective jurors are made under oath. *Duffy v. State*, 567 S.W.2d 197, 200 (Tex. Crim. App. 1978).

Here, the record does not reflect that the trial court administered the required oath to the jury venire before the start of the voir dire examination. The record also does not reflect any objections to the lack of the oath or to the seating of any selected juror on that basis. *See id.* Rule 44.2(c)(2) of the Texas Rules of Appellate Procedure provides as follows: "*Presumptions*. Unless the following matters were disputed in the trial court, or unless the record affirmatively shows the contrary, the court of appeals must presume: . . . (2) that the jury was properly impaneled and sworn[.]" TEX. R. APP. P. 44.2(c)(2). Thus, we must presume on appeal that the jury was

---

[5]The oath provides as follows: "You, and each of you, solemnly swear that you will make true answers to such questions as may be propounded to you by the court, or under its directions, touching your service and qualifications as a juror, so help you God." CRIM PROC. art. 35.02.

properly empaneled and sworn unless the matter was disputed in the trial court or the record affirmatively shows that the trial court failed to complete the proper procedure. *Hollek v. State*, No. 13-16-00402-CR, 2017 WL 1380525, at *1 (Tex. App.—Corpus Christi–Edinburg, Feb. 2, 2017, no pet.) (mem. op., not designated for publication). When the record is silent on the matter, it is not enough to amount to an "affirmative" showing. *Id.* (citing *Osteen v. State*, 642 S.W.2d 169, 171 (Tex. Crim. App. 1982); *Duffy*, 567 S.W.2d at 201).

Here, Appellant has not rebutted the statutory presumption that the jury was properly empaneled and sworn. As noted previously, Appellant's trial counsel made no objection to the proceeding or to the seating of the jurors at any point. Appellant argues that, because the court reporter included transcript notations that individual witnesses were sworn and that the selected jury panel was sworn, but included no such notation as to the venire panel at the beginning of voir dire, there is an affirmative showing that the venire panel was not sworn. We disagree—this merely demonstrates that the record is silent, not that there is affirmative evidence that the venire panel was not sworn. *See Duffy*, 567 S.W.2d at 201; *Hollek*, 2017 WL 1380525, at *2; *Stiggers v. State*, No. 05-97-01373-CR, 2000 WL 150851, at *2 (Tex. App.—Dallas Feb. 14, 2000, no pet.) (mem. op., not designated for publication). Appellant has not provided this court with any affirmative evidence to overcome the presumption that the seated jury was properly empaneled and sworn in this case. Rule 44.2(c)(2), therefore, mandates that we presume on appeal that the jury was properly empaneled. We overrule Appellant's first issue.

*Referring to the Complaining Witness as "Victim"*

In his second issue, Appellant asserts that the trial court erred when it failed to enforce its own order in limine to preclude the State and its witnesses from referring to SR as "the victim." During his cross-examination of Detective Gonzales, Appellant's trial counsel objected on the basis that Detective Gonzales

12

had "repeatedly" violated the trial court's order granting Appellant's motion in limine to not refer to SR as "the victim." In that regard, Detective Gonzales had referred to SR as "the victim" over thirty times prior to Appellant's objection. Appellant's trial objection was solely based on the violation of the limine order. On appeal, Appellant contends that the reference to SR as "the victim" was "highly prejudicial."

A ruling on a motion in limine does not preserve error for appellate review. *Thierry v. State*, 288 S.W.3d 80, 87 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (citing *Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet. ref'd)). A ruling on a motion in limine is not a ruling on the merits but, rather, is one which regulates the administration of a trial. *Id.* By its nature, a ruling on a motion in limine is subject to reconsideration by the trial court throughout the course of trial. *Id.* Accordingly, the violation of a ruling on a motion in limine may entitle a party to relief, but any remedy for such violation lies with the trial court, which may hold the litigant or attorney in contempt or use other remedies or sanctions. *Id.* (citing *Brazzell v. State*, 481 S.W.2d 130, 131 (Tex. Crim. App. 1972)).

Appellant did not preserve the complaint he is asserting for appellate review in two respects. First, Appellant's trial objection was solely based on the violation of a limine order. *See Harnett*, 38 S.W.3d at 655 (holding that where appellant objected to violation of order granting motion in limine, not to admission of evidence itself, no error is preserved). Additionally, to preserve error for appellate review, an appellant is ordinarily required to make a timely request, objection, or motion to the trial court. *See* Tex. R. App. P. 33.1(a)(1). An objection is timely if raised as soon as the ground for the objection becomes apparent; otherwise, the matter is forfeited. *Johnson v. State*, 878 S.W.2d 164, 167 (Tex. Crim. App. 1994); *see Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014) ("[A] party must make the complaint at the earliest possible opportunity."). As we have noted, Detective Gonzales

13

referred to SR as "the victim" over thirty times before Appellant's trial counsel objected. Because the objection was not made at the earliest possible opportunity, the issue complained of on appeal was forfeited.

Moreover, Appellant has not cited, and we have not found, any authority that precludes the State or its witnesses from referring to the complainant in a sexual assault case as a victim. Because of the lack of authority to the contrary, the trial court did not abuse its discretion by reconsidering its prior ruling on Appellant's motion in limine. We overrule Appellant's second issue.

*Evidence of Extraneous Offenses Committed by Appellant against SR*

In his third issue, Appellant contends that the trial court erred by permitting evidence of extraneous offenses committed by Appellant against SR. The State provided Appellant notice under Article 38.37 of its intent to introduce extraneous offense evidence during the guilt/innocence phase. *See* CRIM. PROC. art. 38.37. The notice listed several sexual acts allegedly committed by Appellant against SR, some of which occurred in Ector County and others which occurred in Cameron County. Prior to trial, the trial court heard the parties' motions in limine. The trial court ruled that evidence of alleged sexual acts between Appellant and SR would be admissible at trial. When the topic of conduct occurring in Cameron County came up at trial, Appellant's trial counsel objected to the admission of evidence of extraneous offenses on the basis that they were "prejudicial, not probative, and outside the scope of this case." The trial court overruled the objection.

Whether to admit evidence at trial is a preliminary question to be decided by the trial court. TEX. R. EVID. 104(a); *Tienda v. State*, 358 S.W.3d 633, 637–38 (Tex. Crim. App. 2012). We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). We will uphold the trial court's decision unless it lies outside the zone of

14

reasonable disagreement. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)).

Under Article 38.37, section 1(b):

Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:

(1) the state of mind of the defendant and the child; and

(2) the previous and subsequent relationship between the defendant and the child.

Appellant asserts on appeal that the admission of the extraneous offense evidence violated Rule 404(b) because it constituted character conformity evidence. However, Appellant's trial counsel did not object under Rule 404(b) at trial. Furthermore, by its express terms, Article 38.37, section 1, supersedes the application of Rule 404(b) and makes extraneous offense evidence admissible that Rule 404(b) would preclude. *See Lara v. State*, 513 S.W.3d 135, 141 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Hitt v. State*, 53 S.W.3d 697, 705 (Tex. App.—Austin 2001, pet. ref'd).

When evidence of a defendant's extraneous acts is relevant under Article 38.37, the trial court is still required to conduct a Rule 403 balancing test upon proper objection or request. *Belcher v. State*, 474 S.W.3d 840, 847–48 (Tex. App.—Tyler 2015, no pet.). Under Rule 403, a trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403; *see Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009). "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002);

15

*Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). Evidence is unfairly prejudicial when it has the undue tendency to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render*, 347 S.W.3d at 921.

In reviewing a trial court's determination under Rule 403, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery*, 810 S.W.2d at 392). When conducting a Rule 403 analysis, the trial court must balance the following factors:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest [a] decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). These factors may well blend together in practice. *Id.* Rule 403, however, does not require that the balancing test be performed on the record. *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet. ref'd). In overruling a Rule 403 objection, the trial court is assumed to have applied a Rule 403 balancing test and determined that the evidence was admissible. *Id.*

Appellant asserted at trial that the extraneous acts that Appellant was alleged to have committed against SR had no probative value and were prejudicial. The first *Gigliobianco* factor focuses on the inherent probative force of the proffered evidence. Evidence about extraneous offenses committed by the defendant against the victim are relevant to show the state of mind of the defendant and the victim and

the previous and subsequent relationship between them—permissible areas of inquiry under Article 38.37, section 1(b). *See Hinojosa v. State*, 995 S.W.2d 955, 957 (Tex. App.—Houston [14th Dist.] 1999, no pet.). As the Court of Criminal Appeals explained in *Gigliobianco*, "probative value" is more than just relevance. 210 S.W.3d at 641. It refers to how strongly an item of evidence "serves to make more or less probable the existence of a fact of consequence to the litigation[,] coupled with the proponent's need for that item of evidence." *Id.* As noted in *Distefano v. State*, "[A]rticle 38.37 expands a trial court's analysis under Rule 403 of the probative value of qualifying extraneous offense evidence by allowing the trial court to consider character conformity evidence." 532 S.W.3d 25, 37 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

With respect to the State's need for the evidence under the second *Gigliobianco* factor, as is often the case with sexual offenses against children, the State's case pitted SR's version of the events against Appellant's denials. One issue that Appellant attempted to develop was that SR was unhappy about the move to Odessa. As such, evidence that sexual abuse occurred prior to the move could have served to rebut the suggestion that SR's reports were contrived.

The remaining *Gigliobianco* factors focus on the potential negative effects of the proffered evidence. The third factor focuses on the tendency of the evidence to suggest a decision on an improper basis. Extraneous offenses that involve the sexual assault of children are inherently inflammatory and prejudicial. *Montgomery*, 810 S.W.2d at 397; *Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd). We note that the trial court included a limiting instruction in its charge regarding the jury's consideration of extraneous offense evidence. We presume the jury obeyed this instruction. *See Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003) (appellate courts presume that the jury follows instructions). Thus, the trial court took measures to mitigate the potential improper influence of extraneous

17

offense evidence. *See Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd); *Newton*, 301 S.W.3d at 320.

The fourth factor focuses on the potential of the proffered evidence to confuse or distract the jury from the main issues. This factor weighs in favor of admission because the evidence was probative of the relationship between Appellant and SR, a topic that is relevant under Article 38.37. The fifth factor focuses on the potential of the proffered evidence to mislead the jury. We have previously noted that the trial court gave a limiting instruction. Finally, the sixth factor focuses on the time needed to present the proffered evidence and whether it is cumulative of other evidence. SR's testimony concerning the sexual abuse that occurred in Cameron County only spanned ten pages in the reporter's record, and it was not cumulative of other evidence.

In summary, the extraneous offense evidence in this case was prejudicial. However, Rule 403 contemplates excluding evidence only when there is a "clear disparity" between the offered evidence's prejudice and its probative value. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). Considering the standard of review, the presumption favoring admissibility of relevant evidence, and the *Gigliobianco* factors, we cannot conclude that the trial court abused its discretion in overruling Appellant's Rule 403 objection. *See Hammer*, 296 S.W.3d at 568 ("Because Rule 403 permits the exclusion of admittedly probative evidence, it is a remedy that should be used sparingly, especially in 'he said, she said' sexual-molestation cases that must be resolved solely on the basis of the testimony of the complainant and the defendant." (footnote omitted)). We overrule Appellant's third issue.

18

*Admission of Photographs and Denial of Request to Conduct Voir Dire Examination of SR*

In his fourth issue, Appellant asserts that the trial court erred by admitting photographs into evidence without permitting his trial counsel to conduct a voir dire examination of SR, the sponsoring witness. Specifically, Appellant asserts that his trial counsel should have been permitted to question SR on voir dire examination when photographs were admitted during her testimony. He also contends that SR failed to properly authenticate the photographs and that the trial court erred by overruling his trial counsel's objections on this ground.

Evidence is properly authenticated if the proponent produces evidence "sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). For instance, a witness with knowledge of the item can testify that it is "what it is claimed to be." TEX. R. EVID. 901(b)(1). When a photograph is authenticated by a witness with knowledge, the admissibility of the photograph is conditioned on the witness's identification of the exhibit as a fair and accurate depiction of the subject that the photograph purports to portray. *Kelley v. State*, 22 S.W.3d 642, 644 (Tex. App.—Waco 2000, pet. ref'd); *Davis v. State*, 687 S.W.2d 78, 81 (Tex. App.—Dallas 1985, pet. ref'd). There is no requirement the individual authenticating the photograph have been the photographer or have even been present when the photograph was taken. *Kelley*, 22 S.W.3d at 644; *Davis*, 687 S.W.2d at 81.

The photographs that Appellant's trial counsel objected to fall into multiple categories. First, the State offered an aerial photograph of the gym where one of the sexual assaults occurred. The trial court denied the request by Appellant's trial counsel to take SR on voir dire when this photograph was offered. The next category consisted of photographs of the Westerner Motel. The next category was a photograph of the text message that we previously discussed. Once again, the trial

19

court denied the request by Appellant's trial counsel to question SR on voir dire about the photograph. The final category of photographs are those depicting SR without clothing. Appellant's trial counsel objected to these photographs of SR on the basis that SR could not authenticate that they came from Appellant's phone and that she did not prepare the computer disk on which the photographs were located.

With respect to the two times that Appellant's trial counsel requested to take SR on voir dire, we find the following language from the Austin Court of Appeals to be instructive:

> When there is some reason to doubt whether the witness possesses the requisite personal knowledge, it may be appropriate for the court to afford the opposing party a chance to take the witness on voir dire. But it is neither reasonable nor practical to permit such voir dire when there is no apparent reason for doubting that the witness is testifying from personal knowledge.

*Shugars v. State*, 814 S.W.2d 897, 898 (Tex. App.—Austin 1991, no writ). We agree with this principle—it is neither practical nor necessary to permit a voir dire examination of a witness every time it is requested. Here, on the first occasion when Appellant's trial counsel requested to question SR on voir dire, she had previously testified that she had been to the location and that the photograph depicted that location. The second occasion involved the photograph of the text message. SR had already testified that the photograph depicted a text message that Appellant sent to her. Accordingly, the trial court did not abuse its discretion by denying the requests by Appellant's trial counsel to conduct a voir dire examination of SR.

Appellant also asserts that the photograph of the text message was not relevant. Under Rule 402 of the Texas Rules of Evidence, "[i]rrelevant evidence is not admissible." TEX. R. EVID. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID 401. As was the

case with extraneous offense evidence, the text message was relevant to show the relationship between Appellant and SR, and it corroborated her reports of sexual abuse. Accordingly, the trial court did not abuse its direction by overruling Appellant's relevancy objection.

Appellant's trial counsel objected to the photographs of SR recovered from Appellant's phone because they lacked dates to authenticate them. However, SR testified that the photographs depicted her and that she took many of them. Based upon this authentication evidence, the trial court did not abuse its discretion in overruling Appellant's objection to the photographs of SR. We overrule Appellant's fourth issue.

*Cumulation of Sentences*

In his fifth issue, Appellant contends that the trial court erred by granting the State's request to cumulate Appellant's sentences without giving Appellant the opportunity to present argument on the motion. After the jury returned its verdicts on punishment, the State presented its request to cumulate sentences. The trial court granted the request without asking for argument from Appellant. Appellant did not object at that point on not being able to present argument. However, when the trial court later asked if there was any legal reason why sentence should not be pronounced, Appellant's trial counsel asked to approach the bench and then objected "to the constitutional parameters of this jury not being able to decide whether or not it was cumulative when they made their decision." On appeal, Appellant cites the dissenting opinion in *Barrow v. State* for the proposition that the relevant statute does not explicitly provide that the trial court is to decide whether to cumulate sentences. 207 S.W.3d 377, 382 (Tex. Crim. App. 2006) (Meyers, J., dissenting opinion) (discussing Penal Code Section 3.03(b)).

Under Article 42.08 of the Texas Code of Criminal Procedure, the trial court has the discretion to order the sentences for two or more convictions to run

21

consecutively. CRIM. PROC. art. 42.08(a) (West 2018). The majority opinion in *Barrow* noted that the legislature has assigned the decision to cumulate sentences to the trial court rather than the jury. 207 S.W.3d at 380. Accordingly, Appellant is incorrect in his contention that the jury should have had some role in deciding whether his sentences should be cumulated. *See id.*

Appellant was convicted on nine charges under Section 22.011(a)(2)(A) of the Texas Penal Code. *See* PENAL § 22.011(a)(2)(A). Section 3.03(b) specifically allows consecutive sentencing when, as in this case, an accused is found guilty of more than one statutorily specified sexual offense, including Section 22.011, arising out of the same criminal episode that is committed against a victim younger than seventeen years of age. *See id.* § 3.03(b)(2)(A). We review a trial court's decision to "stack" or to run sentences consecutively for an abuse of discretion. *See* CRIM. PROC. art. 42.08(a); *Beedy v. State*, 194 S.W.3d 595, 597 (Tex. App.—Houston [1st Dist.] 2006), *aff'd*, 250 S.W.3d 107, 115 (Tex. Crim. App. 2008); *Nicholas v. State*, 56 S.W.3d 760, 765 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). An abuse of discretion will generally be found only if (1) the trial court imposes consecutive sentences when the law requires concurrent sentences, (2) the trial court imposes concurrent sentences when the law requires consecutive ones, or (3) the trial court otherwise fails to observe the statutory requirements pertaining to sentencing. *Nicholas*, 56 S.W.3d at 765.

The court in *Barrow* held that "the decision whether to cumulate does not turn on any discrete or particular findings of fact on the judge's part." 207 S.W.3d at 380. "Instead, cumulating is purely a normative decision." *Id.* As a normative process, the decision to cumulate is not intrinsically fact bound, but rather it is a question of policy. *See Mendiola v. State*, 21 S.W.3d 282, 285 (Tex. Crim. App. 2000) (quoting *Miller–El v. State*, 782 S.W.2d 892, 895–96 (Tex. Crim. App. 1990)).

22

Accordingly, the trial court was not required to make a finding that showed a need to stack Appellant's sentences.

The trial court did not abuse its discretion by granting the State's motion and determining to cumulate Appellant's sentences without hearing arguments from Appellant. As we have noted, the trial court is not required to make any particular findings of fact before cumulating sentences under Section 3.03(b)(2)(A). Additionally, and before the cumulation of sentences was pronounced by the trial court, Appellant's trial counsel did object and argued that the jury should have a role in the decision to cumulate sentences—a contention rejected in *Barrow*. *See* 207 S.W.3d at 380. We overrule Appellant's fifth issue.

*This Court's Ruling*

We affirm the judgments of the trial court entered in the following trial court cause numbers: A-18-1422-CR, A-18-1423-CR, A-18-1425-CR, A-18-1427-CR, A-18-1428-CR, A-18-1429-CR, A-18-1430-CR, A-18-1431-CR, and A-18-1432-CR.

JOHN M. BAILEY
CHIEF JUSTICE

August 31, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.